UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAFETY NATIONAL CASUALTY CORPORATION a/s/o Pacific Coast Supply, LLC and PACIFIC COAST SUPPLY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KINSHOFER USA, INC.,<br><br>Defendant. | Case No. 1:21-cv-00376-BLW<br><br>MEMORANDUM DECISION AND ORDER |

### INTRODUCTION

Before the Court are the parties' cross-motions for sanctions for spoliation of evidence. Having carefully reviewed the briefing and record in this case, the Court will grant Plaintiffs' motion in part and deny it part, and grant Defendant's motion.

### BACKGROUND

**1.     The Accident**

This case arises from an accident that occurred on September 19, 2019. Plaintiff Pacific Coast Supply's employees were laying shingles on a roof using a crane truck with a forklift attachment manufactured by Defendant Kinshofer USA.

MEMORANDUM DECISION AND ORDER - 1

As one pallet of shingles was being hoisted onto the roof, an employee noticed the tines on the forklift attachment "tipping and the pallet began to drift." *Compl.* ¶¶ 13–14, Dkt. 1. Sliding off the fork tines, the pallet broke through the roof causing property damage and serious injury to Leo Gutierrez, a Pacific Coast employee. Following the incident, Mr. Gutierrez filed a worker's compensation claim with Pacific Coast, which was insured by Plaintiff Safety National Casualty Corporation ("SNCC").

## 2. Inspections and Attempts to Locate Items

On September 26, 2019, employees of Pacific Coast, I-State Trucks, and Iowa Mold Tooling, Inc. inspected the crane truck and Kinshofer forklift attachment.[1] Following the inspection, I-State's inspector, Brian Leick, wrote a report recording his findings. Dkt. 33-4. The inspectors had been able to replicate the forklift attachment's drifting, which Mr. Leick believed was caused by "some type of failure or contamination with the cylinder holding valve." *Id.*

The next day, Mr. Leick contacted Kinshofer requesting a replacement valve for the forklift attachment. But Kinshofer advised that it preferred to replace the

---

[1] I-State Trucks is the distributor that sold the Kinshofer forklift attachment and crane truck to Pacific Coast. *Buczek Decl.*, Dkt. 32-3. Iowa Mold Tooling, Inc. is the manufacturer of the crane truck involved in the accident. *Id.*

**MEMORANDUM DECISION AND ORDER - 2**

entire forklift attachment rather than only the valve. After replacing the attachment on or about October 22, 2019, Kinshofer conducted various tests, during which it was unable to replicate the drifting that Pacific Coast's employee reportedly observed just before the accident. *Martin Decl.* ¶ 6, Dkt. 38-2.

After completing its tests, Kinshofer replaced the hydraulic cylinder valve in the forklift attachment and returned the forklift attachment to I-State for resale. *Id.* ¶ 7. Given Mr. Leick's statement that he believed "some type of failure or contamination *with the cylinder holding valve*" caused the accident, Kinshofer reports that it did not believe there was "any allegation that the rest of the Kinshofer forklift attachment was defective." *Id.* (emphasis added). Kinshofer then sent the hydraulic cylinder valve to its parent company, Kinshofer Germany GmbH, for further inspections and testing. *Id.* ¶ 14.

In January of 2022, counsel for the plaintiffs discovered that Kinshofer had returned the forklift attachment to I-State for resale. Wishing to conduct their own inspections of the forklift attachment, Plaintiffs sent I-State a subpoena requesting information as to its whereabouts. *Morgan Decl.*, *Ex. B*, Dkt. 38-1. However, I-State failed to provide such information and, at the time Plaintiffs filed this motion, it appears that neither party in this action knew where the attachment was located.

In July of 2022, counsel for Kinshofer inquired with Francois Martin, a

**MEMORANDUM DECISION AND ORDER - 3**

member of Kinshofer's Executive Board, about locating the hydraulic cylinder valve, which was presumably still at Kinshofer's facility in Germany. *Martin Decl.* ¶ 19, Dkt. 38-2; *Morgan Decl.* ¶ 10, Dkt. 38-1. Mr. Martin's initial efforts at locating the valve were unsuccessful and communication was slow. On August 22, 2022, Plaintiffs served discovery seeking to locate the valve, prompting defense counsel to follow up with Mr. Martin and emphasize the importance of locating the valve. *Morgan Decl.* ¶ 11, Dkt. 38-1.

An extensive back-and-forth ensued between defense counsel, Kinshofer's US-based employees, and Kinshofer's Germany-based employees, regarding the whereabouts of the valve. *Morgan Decl.* ¶¶ 11–21, Dkt. 38-1; *Martin Dec.* ¶¶ 20–23, Dkt. 38-2; *Koller Dec.* ¶¶ 11–13, Dkt. 38-3. Eventually, on January 18, 2023, based on Mr. Martin's representations, defense counsel told plaintiffs' counsel that it "appeared" the original cylinder valve had been discarded. *Morgan Decl.*, *Ex. I*, Dkt. 38-1.

On or about January 20, 2023, one of Kinshofer's Germany-based employees, Michael Koller, discovered the hydraulic cylinder valve at the company's facility in the Czech Republic. *Koller Dec.* ¶ 14, Dkt. 38-3. He determined that it was the missing valve at issue in this case because it was in a bag labeled with the warranty number assigned to the missing valve. *Id.* ¶ 15.

**MEMORANDUM DECISION AND ORDER - 4**

Shortly thereafter, on the last day of fact and expert witness discovery in this case, defense counsel advised plaintiffs' counsel that the original valve had been located and was being shipped back to Sanborn, New York. *Morgan Decl.* ¶ 21, Dkt. 38-1.

3. **Vehicle Inspection Records**

During discovery, Kinshofer sought information about any vehicle inspections and maintenance that Pacific Coast performed on the crane truck and forklift attachment leading up to the accident. Plaintiffs confirmed that Pacific Coast "performs daily vehicle inspection reports (DVIR's) which include an inspection of the truck and all attached equipment." *Morgan Decl.*, *Ex. G*, Dkt. 32-2. However, Plaintiffs explained that because the Department of Transportation only requires retention of such reports for 90 days, "there no longer are records of any inspections made before the date of incident." *Id.*

4. **Present Motions**

Following the return of the hydraulic cylinder valve to the United States, defense counsel acknowledged to plaintiffs' counsel that the discovery deadlines in this case may need to be extended to allow plaintiffs to inspect the valve. *Morgan Decl.*, *Ex. K*, Dkt. 38-1. Plaintiffs rebuffed that offer, however, choosing instead to file a motion for sanctions. In it, they argue that Kinshofer "maliciously" spoliated evidence by (1) returning the forklift attachment to the streams of commerce and

**MEMORANDUM DECISION AND ORDER - 5**

(2) discarding or concealing the hydraulic cylinder valve until discovery closed. By way of remedy, Plaintiffs seek outright dismissal of Kinshofer's liability defenses, or, in the alternative, either a mandatory adverse inference or the exclusion of evidence regarding the forklift attachment and cylinder valve. *Pl.'s Memo. in Supp.* at 8, Dkt. 33-1.

Almost simultaneously, Kinshofer filed its own motion for sanctions over Plaintiffs' destruction of the daily inspection records generated prior to September 19, 2019. By way of remedy, Kinshofer seeks a permissive adverse inference that the missing inspection records would have supported Kinshofer's version of events.

## LEGAL STANDARD

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to properly preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Balla v. Idaho State Bd. of Corr.*, 119 F. Supp. 3d 1271, 1282 (D. Idaho 2015) (cleaned up). "A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

A party seeking sanctions for spoliation of evidence must prove: "(1) the

MEMORANDUM DECISION AND ORDER - 6

party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind'; and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence." *Balla*, 119 F. Supp. 3d at 1282 (quoting *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 1010 (C.D. Cal. 2013)).

## PLAINTIFFS' MOTION FOR SANCTIONS

Plaintiffs seek sanctions against Kinshofer for (1) failing to preserve the forklift attachment for use as evidence and (2) discarding or concealing the hydraulic cylinder valve until discovery had closed. The Court will grant the motion, in part, as to the forklift attachment, but deny it as to the hydraulic cylinder valve.

**1.   Plaintiffs are entitled to sanctions for Kinshofer's spoliation of the forklift attachment.**

A threshold question is whether Kinshofer spoliated the forklift attachment by returning it to I-State for resale. Kinshofer argues that was not spoliation because Plaintiffs still could have located the attachment by enforcing a subpoena against I-State. But Kinshofer cannot shirk its duty to preserve evidence by speculating that Plaintiffs could theoretically locate the attachment through other means. Spoliation includes not only the destruction of evidence but also "the

**MEMORANDUM DECISION AND ORDER - 7**

failure to properly preserve property for another's use as evidence." *Balla*, 119 F. Supp. 3d at 1282. Kinshofer failed to preserve relevant evidence when it returned the forklift attachment to I-State for resale into the market where the attachment would not be accessible for "use as evidence"—at least without substantial costs to Plaintiffs.

Plaintiffs have satisfied each of the three elements for establishing spoliation. First, following the accident in September of 2019, Kinshofer had an obligation to preserve the forklift attachment. A party "must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Bown v. Reinke*, No. 1:12-cv-262-BLW, 2016 WL 107926, at *5 (D. Idaho Jan. 8, 2016); *see also Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). In October of 2019, Kinshofer received notice of a potential subrogation claim arising from the accident. *Kelly Decl.*, *Ex. C*, Dkt. 33-5. From at least then on, Kinshofer should have known that the forklift attachment—which was the subject of an inspection immediately following the accident—might be relevant to future claims for personal injury or property damage.

Second, Kinshofer had a sufficiently culpable state of mind when it returned the forklift attachment to I-State for resale. Bad faith is not required. Rather,

**MEMORANDUM DECISION AND ORDER - 8**

sanctions may be imposed so long as Kinshofer had notice of the potential relevance of the evidence to future litigation. *Glover*, 6 F.3d at 1329; *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed.") (citation and quotation marks omitted). Kinshofer claims that it did not know the forklift attachment was relevant because it was not "aware of any claims that the forklift attachment *as a whole* was claimed to be defective." *Def.'s Memo. in Opp.* at 15, Dkt. 38 (emphasis added). But that just cannot be. Although Mr. Leick had opined that the accident resulted from "some type of failure or contamination with the cylinder holding valve," Plaintiffs never gave the forklift attachment a clean bill of health or indicated that its condition would not be relevant in future litigation. On the contrary, the forklift attachment (to which the hydraulic cylinder valve was connected) could certainly be relevant in any case arising from the accident.

    The third element for spoliation is therefore also satisfied: the forklift attachment is relevant to Plaintiffs' present claims. One of the key questions in this case is *why* the forklift tines tilted, causing the pallet to fall. That question, in turn, hinges on the presence or absence of defects in the equipment used during the

**MEMORANDUM DECISION AND ORDER - 9**

accident—including the forklift attachment.

Finding that Kinshofer did spoliate evidence, the Court now considers the appropriate remedy. The Court has wide discretion in imposing sanctions, which "can range in severity from minor sanctions, such as awarding attorneys' fees, to more severe sanctions including permitting a jury to draw an adverse inference against a party responsible for the destruction of evidence, ordering the exclusion of evidence, or even dismissal of claims." *Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corp.*, No. 1:17-cv-519-DCN, 2019 WL 2236080, at *6 (D. Idaho May 21, 2019) (citing *Glover*, 6 F.3d at 1329). Sanctions "must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence and the degree of prejudice suffered by the movant." *Balla*, 119 F. Supp. 3d at 1282 (internal citation and quotation marks omitted). And, in selecting an appropriate remedy, courts generally choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (cited approvingly by *Miranda v. Watt*, 677 Fed. Appx. 432, 433 (9th Cir. 2017)).

Plaintiffs ask for dismissal of Kinshofer's liability defenses. But that sanction would be too harsh considering that Kinshofer does not appear to have

**MEMORANDUM DECISION AND ORDER - 10**

acted with malice and considering that the degree of prejudice is lessened by the fact that the attachment was sold, but not destroyed.[2]

The proper remedy, instead, is the exclusion of any evidence derived from Kinshofer's tests or inspections of the forklift attachment after September 26, 2019. This remedy ensures that Kinshofer will not reap the benefits of briefly retaining the attachment to conduct its own tests and inspections without giving Plaintiffs the chance to do the same.[3]

## 2. Plaintiffs are not entitled to sanctions for spoliation of the hydraulic cylinder valve.

Plaintiffs next seek sanctions for Kinshofer's delay in disclosing the whereabouts of the hydraulic cylinder valve and making that part available for inspection by Plaintiffs' expert. They note that, from August 2021 to January 2022, Kinshofer could not locate the hydraulic cylinder valve and Plaintiffs therefore could not inspect it. Then, on January 27, 2023, one day before the fact and expert

---

[2] It is unclear where Plaintiffs' efforts to obtain the forklift attachment ended, and whether there is still a chance that Plaintiffs could obtain the attachment. It is clear, however, that Kinshofer returned the attachment to I-State for resale on the market, that Plaintiffs attempted to obtain the attachment from I-state via a subpoena, and that I-State failed to disclose the whereabouts of the attachment in response to that subpoena.

[3] The Court may consider further sanctions if warranted by subsequent developments. For example, if Plaintiffs demonstrate that, despite taking reasonable steps, they are ultimately unable to obtain the forklift attachment from I-State for testing and inspection, Plaintiffs may renew their request for a permissive adverse inference instruction.

**MEMORANDUM DECISION AND ORDER - 11**

witness discovery deadlines in this case, the valve "miraculously appear[ed]." *Pl.'s Memo. in Supp.* at 5, Dkt. 33-1. From that "incredible" timing, Plaintiffs suggest that "it can only be surmised that Defendant orchestrated this scenario in order to prevent plaintiffs from having the opportunity to timely, accurately, and rightfully inspect the cylinder valve in question within the guidelines of this Court's Scheduling Order." *Id.*

Sanctions are inappropriate here for two reasons. First, Kinshofer did not destroy or fail to preserve the hydraulic cylinder valve. To be sure, it did significantly delay locating and producing the valve. But destruction and delay differ categorically.[4] Second, the coincidental timing of the valve's discovery just before the case management deadlines does not necessarily reveal disingenuousness or deceit. On the contrary, the circumstances here are telling. In correspondence with plaintiffs' counsel immediately after Kinshofer found the

---

[4] Plaintiffs also argue that Kinshofer failed to maintain an adequate chain of custody to establish the authenticity of the hydraulic cylinder valve. But the authenticity of an item goes to its admissibility and weight as evidence, not to spoliation. *See Meadows v. Anchor Longwall and Rebuild, Inc.*, 455 F.Supp.2d 391, 397–98 (W.D. Pa. 2006); Fed. R. Ev. 901(a). Here, Plaintiffs have not asserted that Kinshofer did, in fact, destroy the original valve. Instead, they argue only that there is an insufficient chain of custody to determine, for certain, whether or not the discovered valve is the original valve. *See Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) ("[B]ecause [the] plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions."), *aff'd*, 961 F. Supp. 2d 572 (S.D.N.Y. 2013).

valve, defense counsel voluntarily suggested that the discovery deadlines may need to be adjusted. *Kelly Decl., Ex. G*, Dkt. 33-9; *Morgan Decl., Ex. K*, Dkt. 38-1. Kinshofer's willingness to extend deadlines would make no sense under Plaintiffs' theory—that is, if Kinshofer was attempting gamesmanship by waiting until the last day of discovery to "find" the hydraulic cylinder valve.

### 3. Conclusion

The Court will partially grant Plaintiffs' motion for spoliation as to the forklift attachment but will deny the motion as to the hydraulic cylinder valve. If they have not done so already, the parties should confer regarding a stipulated modification to the case management deadlines providing Plaintiffs a fair opportunity to inspect and test the hydraulic cylinder valve.

## DEFENDANT'S MOTION FOR SANCTIONS

Kinshofer seeks sanctions against Plaintiffs for failing to preserve vehicle inspection records for the crane truck involved in the accident. The Court will grant Kinshofer's motion and award a permissive adverse inference that the destroyed vehicle inspection records would have favored Kinshofer's version of events.

Kinshofer satisfies all three requirements for obtaining spoliation sanctions. First, Plaintiffs had a duty to retain the vehicle inspection records because they

should have known those records would be relevant to Kinshofer's defenses. Plaintiffs were aware that the accident occurred on September 19 and knew of the claim that it was caused by a defect in the forklift attachment. They also knew, or should have known, that the issue of causation would be central to such a claim and any defenses to that claim. By destroying the inspection records for the crane truck involved in the accident, Plaintiffs destroyed information that may have assisted Kinshofer in proving that the accident was caused by something other than a defect in its forklift attachment or hydraulic cylinder valve.

Second, Plaintiffs destroyed the vehicle inspection records willfully. As explained above, in federal court, spoliation does not require bad faith. Willfulness is sufficient—that is, "some notice that the documents were potentially relevant to the litigation." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *see also Glover*, 6 F.3d at 1329. Plaintiffs had such notice. Finally, the daily vehicle inspection records were highly relevant to Kinshofer's position that the accident was caused by something other than a defect in its product. Indeed, such records could help Kinshofer in more than one way: either by revealing defects in other parts and fluids or by revealing that inspections were not properly performed.

In sum, Plaintiffs spoliated evidence by destroying the daily vehicle inspection records for the crane truck generated on and before September 19, 2019.

**MEMORANDUM DECISION AND ORDER - 14**

The appropriate remedy, commensurate with the degrees of fault and prejudice, is a permissive adverse inference that the destroyed vehicle inspection records would have favored Kinshofer's version of events.

## ORDERS

IT IS ORDERED that:

1. Plaintiffs' Motion for Sanctions (Dkt. 33) is **GRANTED in part and DENIED in part.** It is granted to the extent that Kinshofer is barred from offering any evidence obtained or generated by it or its agents as a result of tests or inspections of the forklift attachment performed after September 26, 2019.

2. Defendants' Motion for Sanctions (Dkt. 32) is **GRANTED**. Kinshofer is entitled to a permissive adverse inference that the vehicle inspection records for the crane truck generated on and before September 19, 2019, would have favored Kinshofer's version of events.

3. Both parties partially succeeded on their motions, so each party shall bear its own attorneys' fees and costs incurred in bringing and defending against these motions.

DATED: **June 02, 2023**

B. Lynn Winmill
U.S. District Court Judge